DAYTON (CITY), PLAINTIFF, *v.* ALLEN, DEFENDANT.

Common Pleas Court, Montgomery County.

No. 114781.   Decided May 19, 1959.

130

*Mr. Herbert S. Beane,* city attorney (*Mr. William P. Keane*), for plaintiff-appellee.
*Mr. Herbert M. Eikenbary,* for defendant-appellant.

MARTIN, J. This case comes before the Court on the appeal of the defendant-appellant from the verdict of the jury in the Municipal Court of Dayton, Ohio, finding him guilty of driving while intoxicated, and from the judgment entered on the verdict.

Appellant claims the Court erred, first, in refusing a request that the jury be polled; second, in failing to instruct the jury upon two included lesser offenses, to-wit, physical control of a motor vehicle while under the influence of alcohol, and improper operation of a motor vehicle; third, in permitting the Prosecuting Attorney to make reference during the trial of the case and in argument to the drunkometer, its performance and

the failure and refusal of defendant to take a drunkometer test, and in not removing such remarks from the consideration of the jury; and fourth, in the admission of evidence concerning a drunkometer.

With relation to appellant's first specification of error, to-wit, the Court's refusal to poll the jury as requested by counsel for defendant, we note the following from the bill of exceptions and transcript of the proceedings from the time the jury returned to the Courtroom:

"4:50 P. M. (Jury returns to Courtroom)

"THE COURT: (To the Jury) Have you arrived at a verdict?

"JUROR No. 6 (foreman) We have, your Honor. (Verdict handed to Mr. Frank Neutbenholzer, who reads as follows:)

"The *City of Dayton, Ohio,* v. *Jay W. Allen,* Case No. B-166613. November 5, 1958

"VERDICT: We, the Jury in this case, being duly impaneled and sworn, do find the defendant GUILTY.

| | | |
|---|---|---|
| (Signed) | | Oliver Taulbee, Foreman |
| (Signed) | 2 | Florence M. Herolzer |
| | 3 | Gloria Cave |
| | 4 | Barbara Stoeckel |
| | 5 | Beatrice H. Peck |
| | 6 | Marvin L. Poindexter |
| | 7 | James P. Roberts |
| | 8 | Jack L. Schoner |
| | 9 | James M. Ruel |
| | 10 | Leroy Newman |
| | 11 | Amy E. Dillard |
| | 12 | Raymond W. Rau" |

"MR. EIKENBARY: (To the Court) Could we ask that the jury be polled, your Honor?

"THE COURT: No. They have all signed here. (Indicating the twelve signatures on the verdinct form)

"MR. EIKENBARY: I would like the customary time for a motion.

"THE COURT: You may file your motion by Monday, November 10th, 1958.

"MR. EIKENBARY: Could we have a little longer? I have another case in Court and would like it a little later.

"THE COURT: All right. November 14th, 1958."

There is no other reference to the polling of the jury in the bill of exceptions and transcript of the testimony and proceedings, prior to the discharge of the jury.

The above-quoted portion of the transcript of the proceedings indicates that the Clerk receiving and reading the verdict did not, after he read the verdict, put, or have the opportunity to put the usual and customary question to the jury, "Is this your verdict? So say you all?" He may have been prevented from doing so by Mr. Eikenbary's interjection of the question, "Could we ask that the jury be polled, your Honor?" The Court's statement in response to the question of counsel for the defendant, "No, they have all signed here.", accompanied by some gesture referring to the location on the verdict form of the twelve signatures, fails to indicate that the Court made any inquiry of the jury as to whether or not they all assented to the verdict.

From the foregoing, it appears that the jury were never individually, or as a group questioned by the Court or the Clerk, as to whether or not the verdict was their verdict before their discharge, and were not afforded an opportunity in open Court to indicate their assent to or dissent from the verdict.

Under such circumstances, was the defendant deprived of a fundamental right to have determined in open court, before the verdict was finally accepted and the jury discharged, whether or not the verdict at that time was the verdict of each and every member of the jury of twelve?

Under the provisions of Section 1901.21, Revised Code of the Uniform Municipal Court Act of Ohio, the practice, procedure, the mode of bringing and conducting prosecutions for offenses in criminal cases in the Municipal Court of Dayton, and the power of the Court in relation thereto, are controlled by paragraph (A) of said Section, which provides:

"In a criminal case or proceeding, the practice, procedure, and mode of bringing and conducting prosecutions for offenses, and the power of the court in relation thereto, are the same as those which are conferred upon police courts in municipal corporations. If no practice or procedure is provided for police courts, then the practice or procedure of mayors' courts shall apply. If no practice or procedure is provided for police

courts or mayors' courts, then the practice or procedure of justice of the peace courts shall apply. * * *''

No provisions can be found in the Police Court Acts governing the practice and procedure in receiving verdicts. However, Section 1905.05, Revised Code, in the chapter dealing with mayors' courts, provides:

''If the charge against an accused is the violation of a city ordinance in a matter with respect to which imprisonment may be a part of the punishment, and the accused does not waive a jury, the mayor of such city shall impanel a jury, and try the case on the affidavit, in the same manner, and with the same effect, as misdemeanors are tried in the Court of Common Pleas on indictment.''

Consequently, the Revised Code provisions applicable to Common Pleas Courts, and the construction given such sections, are binding on the Municipal Court of Dayton in cases involving prosecution of misdemeanors punishable by imprisonment, as is the Municipal Court in the case under consideration.

Section 2945.77, Revised Code, a part of our present Code of Criminal Procedure, governing the procedure of polling a jury in both felony and misdemeanor cases, and applicable to the instant case, reads as follows:

''Polling Jury.

''When jurors agree upon their verdict, they must be conducted into court by the officer having them in charge.

''When the verdict is accepted the jury may be polled at the request of either the prosecuting attorney or the defendant. If one of the jurors upon being polled declares that said verdict is not his verdict, the jury must further deliberate upon the case.''

The question raised by the language, ''the jury may be polled at the request of either the prosecuting attorney or the defendant,'' is whether or not it was mandatory upon the court or the clerk to poll the jury individually when requested to do so by counsel for the defendant.

The intention of the legislature in enacting the polling provision in Section 2945.77, Revised Code, can only be ascertained by reviewing the applicable case law, and statutory provisions, both criminal and civil, which are inextricably related.

In Ohio there are several decisions in criminal cases, and at least one decision in a civil case predating the original verdict sections of the civil and criminal codes of procedure, in which the first provisions relating to polling a jury are found. In the case of *Sargent* v. *State*, 11 Ohio Reports, 472 (1841), the defendant Sargent was charged in the first count of the indictment with the criminal offense of uttering and publishing a counterfeit bank bill, and in the second count with an attempt to utter and publish said bill. Upon the trial the jury returned a verdict of guilty on the first count only, in a sealed verdict opened the morning after the jury was discharged. No reference was made in the verdict to the second count. The Court thereupon recalled the jury, ascertained that the jury considered defendant guilty also on the second count, and then ordered a general verdict of guilty to be entered on the indictment. The Supreme Court of Ohio, in error proceedings, held that once the jury had been discharged, the court and the jury lost control over the verdict, and that thereafter it could not be altered or amended. The Court, among other things, made the following reference on page 474 to polling the jury:

"In criminal cases, although the court directs the jury to bring in a sealed verdict, the whole jury must be present at the time of its delivery, in the presence of the prisoner, that they may be polled, if the prisoner desires it."

The Court, in *State* v. *Engles*, 13 Ohio Reports, 490 (1844), after citing the holding in the *Sargent case* that the whole jury and the defendant must be present when a sealed verdict is delivered, that they may be polled if the defendant so desires, stated at page 494:

"If the jury are in court to deliver a sealed verdict, it allows the prisoner the benefit of polling them."

It may be fairly inferred from the remarks of the Court that it was of the opinion the defendant had a right to be present in Court, and to poll the jury on their verdict even in cases where the verdict had been sealed.

The Court further states on page 494, the following:

"It is laid down in elementary writers, that the verdict of a jury, in criminal cases, is to be considered and delivered in with the same form as in civil cases, except that they cannot

give a privy verdict, nor can they be discharged without giving a verdict but in cases of necessity. 4 Black. Com., 360. The reason why a privy verdict could not be taken was, that it deprived the prisoner of meeting the jury face to face and demanding of each his separate verdict. The privy verdict was of no force unless afterward publicly affirmed by a public verdict in open court, wherein the jury might, if they pleased, vary from the privy verdict.''

In the case of *Rose* v. *State*, 20 Ohio Reports, 32 (1851), the Court stated on page 34:

''Again, an accused person when a verdict of guilty is returned against him, has a right to have the jury polled. This privilege is never in this state denied in a criminal case, although it is a matter of discretion with the court whether it shall or shall not be allowed in a civil case. Of this privilege the accused person is deprived unless present when the verdict is returned.''

One civil case decided in 1834, about nineteen years before the first civil verdict section of the Code of Civil Procedure was enacted, has come to the attention of the Court, to-wit, *Landis* v. *Dayton*, Wright's Reports, page 659, in which the Court stated on page 660 the following:

''As to the refusal to poll the jury, we do not recognize any right in a party in a civil case to poll a jury—though we sometimes allow it, if the verdict is delivered under circumstances of suspicion. It is, we think, mere matter of practice, for each court to regulate for itself.''

There were no statutory provisions in Ohio relating to the procedure governing the receiving of verdicts in civil cases until the adoption of the Civil Code in March, 1853, at which time polling of the jury generally by the clerk and also individually, if required by either party, was made mandatory and has remained so ever since. Since the provisions of original Sections 273 and 274 of the 1853 Civil Code, governing the polling of a jury, were adopted by reference as a part of the original Code of Criminal Procedure in 1869, we will quote such sections in full. Original Section 273 provided:

''When the jury have agreed upon their verdict, they must be conducted into court, the names called by the clerk, and the verdict rendered by their foreman.

"When the verdict is announced, either party may require the jury to be polled, which is done by the clerk or the court asking each juror if it is his verdict. If anyone answers in the negative the jury must again be sent out for further deliberation."

The following section, 274, provided:

"The verdict shall be written, signed by the foreman, and read by the clerk to the jury, and the inquiry made whether it is their verdict. If any juror disagrees the jury must be sent out again; but if no disagreement be expressed, and neither party requires the jury to be polled, the verdict is complete, and the jury discharged from the case. If, however, the verdict be defective in form only, the same may, with the assent of the jury before their discharge, be corrected by the court."

These two sections, and the amendments thereto by subsequent legislation, are discussed in the case of *Lehr* v. *Cleveland Railway et al*, 20 O. N. P. (N. S.), page 481, at pages 490, 491 and 492. The right of each party to require the polling of the jury is preserved through the changes in and additions to the two original sections, as is the requirement that the clerk make inquiry of the jury whether the written verdict is their verdict. Such inquiry, prior to 1913, was directed to *all* the jurors as verdicts in both criminal and civil cases required the concurrence of all twelve jurors until May 14, 1913, when Section 11455, General Code, was passed, providing for verdicts in civil cases by a concurrence of three-fourths or more of the members of the jury, pursuant to authority granted by the 1912 amendment of Article 1, Section 5 of the Ohio Constitution.

The language of the various civil verdict sections since 1853, including Sections 2315.09, 2315.10 and 2315.11, Revised Code, now in effect, never expressly or impliedly gave to the Court the discretion to refuse the request of either party to poll the jury, although if neither party so requested, the Court was not required to poll or order the polling of the jury, providing the inquiry theretofore made by the clerk, as to whether the written verdict was the verdict of the jury, or, after May 13, 1913, of three-fourths or more of their number, was answered by every necessary concurring juror in the affirmative. Under

the provisions of such sections, if neither party, after being given the opportunity, requests or requires the jury to be polled, both waive such right.

The three pertinent civil verdict sections of the Revised Code now in force and effect, read as follows:

"Section 2315.09, Revised Code, 'Verdict'

"In all civil actions a jury shall render a verdict upon concurrence of three-fourths or more of their number. The verdict shall be in writing and signed by each of such jurors concurring therein, and they must then be conducted into court where their names shall be called by the clerk and the verdict handed to the clerk by the foreman. The clerk must then read the verdict to the jury and make inquiry if it is the verdict of three-fourths or more of their number.

"Section 2315.10, Revised Code, 'Poll of jury; further deliberation'

"Either party may require the jury to be polled, which shall be done by the clerk or the court, asking each juror if it is his verdict. If on polling the jury more than one-fourth of the jury answers in the negative, or if the verdict in substance is defective, the jury must be sent out again for further deliberation.

"Section 2315.11, Revised Code, 'Final verdict; correction of defective verdict'

"If the disagreement of more than one-fourth of the jury is not expressed and neither party requires the jury to be polled, or on the polling three-fourths or more of the jurors answers affirmatively, the verdict is complete and the jury shall be discharged from the case.

"When the verdict is defective in form only, with the assent of the jurors and before their discharge, the court may correct it."

In the case of *Kinney* v. *Hartshorn*, 28 Ohio Law Abs, 116, the Court, in construing Sections 11420-9 and 11420-10, General Code, the same being identical with Sections 2315.09 and 2315.10, Revised Code, held that the court is under a mandatory duty to have the jury polled in a civil case when requested by either party, and that it is likewise mandatory that the clerk, after calling the roll of the jury and reading the verdict, inquire of

the jury if it is the verdict of three-fourths or more of their number.

The defendant in the *Kinney case*, was charged with bastardy, which was triable under the rules of civil procedure, and defendant was found not guilty by the jury. The plaintiff, not the defendant, requested that the jury be polled, and the Court of Appeals in its decision, stated as follows, on pages 118 and 119:

"It does not appear from the record of proceedings found on pages 195 and 196 that any inquiry was made if it was the verdict of three-fourths or more of their number. This is a positive and mandatory requirement by the provisions of said section. (Section 11420-9, General Code.)"

The Court of Appeals, after noting that the trial court had directed the clerk later in the case to ask the jury whether the verdict which they had returned was the verdict of three-fourths or more of their number, which was done, and to which the jury answered in the affirmative in unison, stated the following at page 118:

"It hereby appears that the inquiry was made of the panel in unison, while Section 11420-10, General Code, requires the asking of each juror if it is his verdict. This was not done and in the opinion of the court this requirement was also mandatory."

The Court in conclusion stated on page 119:

"The Court finds that prejudicial and reversible error occurred in the refusal of the court to poll the jury as requested, and there was no legal or recognizable reason for not so doing. This is not a technical matter, but a plain, positive—mandatory direction. It is what shall take place in the reception of a verdict and the duty to poll the jury, when requested as herein."

With relation to the polling provisions of the Criminal Code, the Ohio legislature first regulated the procedure of receiving verdicts in criminal cases by the enactment of Sections 164 and 166 of the Code on Criminal Procedure, effective August 1st, 1869:

"Section 164. The proceedings provided by law in civil cases as to the conduct of the jury, the admonitions of the court, and the manner of returning the verdict, shall be had upon all

trials on indictments, so far as such proceedings may be applicable, and when it is not otherwise provided. * * *''

"Section 166. When the jury have agreed upon their verdict, they must be conducted into court by the officer having them in charge. Before the verdict is accepted, the jury may be polled at the request of either the prosecuting attorney or the defendant.''

The above quoted provisions of Section 164 of the original Code of Criminal Procedure, by incorporating by reference the provisions of the Civil Code relating to polling, made it mandatory that the jury be polled by the court or the clerk upon request of either the prosecuting attorney or the defendant in a criminal case. This section was repealed in 1871, although Section 166 was re-enacted with slight variations in form as Section 7314 of the Revised Statutes in 1891, and as Section 13690, General Code, in 1910. In 1929 the legislature in enacting Section 13448-5, General Code, re-enacted Section 166 of the 1869 Code of Criminal Procedure word for word, and added the following sentence to the second paragraph:

"If, upon such jury being polled, one or more of the jurors shall declare said verdict not to be his verdict, the jury must further deliberate upon the case.''

Section 2945.77, Revised Code (hereinbefore set forth), now in effect and controlling the procedure of polling juries in criminal cases, has identically the same language in the first two sentences as Section 13448-5, General Code, although the second sentence of the second paragraph was simplified though not changed in substance.

Section 2945.77, Revised Code, made no provision that the clerk call the roll of the jury, that he read the verdict to the jury and make inquiry whether it is their verdict, or that upon a poll being requested, he ask each juror if it is his verdict, as is done in Sections 2315.09 and 2315.10, Revised Code, governing the receiving of verdicts in civil cases. However, it is clear that the legislature intended that the clerk or court follow the same procedure in polling a jury in a criminal case pursuant to the request of counsel, as is specifically required in a civil case under Sections 2315.09 and 2315.10, as the legislature in 1869 adopted the polling procedure used by the clerk or court in civil cases through the provisions of Section 164 of the 1869

Code of Criminal Procedure, hereinbefore discussed. The meaning of the word "polled," and the method of polling the jury provided by the Civil Procedure Sections were transferred to and became the meaning of the word "polled" used in Section 166 of the Criminal Procedure Code during the two years that Section 164 was in force and effect. After Section 164 was repealed in 1871, the same meaning continued to be attached to the word "polled" in the Criminal Procedure Code, as the legislature has failed in its re-enactments of said section, up to the present Section 2945.77, Revised Code, to express any different meaning.

Incidentally, original Section 164 of the 1869 Code of Criminal Procedure, by adopting the verdict provisions of the 1853 Code of Civil Procedure, made it mandatory that verdicts in criminal cases be in writing, signed by the foreman, which requirement continued to be mandatory until 1871, when original Section 164 was repealed. Such requirement was impliedly recognized by the following language of Section 151 of the 1869 Code of Criminal Procedure:

"* * * and all written charges and instructions shall be taken by the jury in their retirement, *and returned with their verdict into court*, and shall remain on file with the papers of the case." (Emphasis by the Court.)

This provision has been retained with practically no change in Section 7300, Revised Statutes (1889), Section 13675, General Code (1910), Section 13442-8, General Code (1929), and in present Section 2945.10, Revised Code.

The requirement that the foreman only sign the written verdict of the jury in criminal cases, established by original Section 164, in force from 1869 to 1871, has generally been continued, as the customary procedure in criminal cases since 1871, in the seeming absence of any specific statutory enactment to that effect or otherwise since the repeal of said original Section 164.*

---

*See Section 2945.17.1, Revised Code, requiring verdict in criminal cases to be in writing and signed by each of the jurors concurring therein. (Eff. Sept. 28, 1961), and which reads as follows:

"In all criminal cases the verdict of the jury shall be in writing and signed by each of the jurors concurring therein."

Returning to the question we are called upon to answer, namely, whether or not,—in spite of the omissions from Criminal Section 2945.77, Revised Code, of the mandatory language and detailed polling procedure contained in the Civil Procedure Sections,—polling in criminal cases involving felonies or misdemeanors punishable by imprisonment, when requested by either party, is equally mandatory upon the clerk and the Court as in civil cases.

In answering such question, it should first be noted that Title XXIX, Revised Code, entitled "Crimes—Procedure," clearly embraces both felonies and misdemeanors, and that Section 2945.77, Revised Code, under Title XXIX, controls the trial procedure in both felony and misdemeanor cases without distinction.

The second sentence in Section 2945.77, Revised Code, providing for polling of a jury in criminal cases, to-wit:

"When the verdict is accepted the jury may be polled at the request of either the prosecuting attorney or the defendant." implies that either the prosecuting attorney or the defendant may elect to poll the jury, but there is no language therein from which it may be reasonably implied that the court has the right or discretion to refuse such request. The last sentence of said Section, to-wit, "If one of the jurors upon being polled, declares that said verdict is not his verdict, the jury must further deliberate upon the case.", is similar to the last sentence of Section 2315.10, Revised Code, governing the polling of juries in civil cases.

We are convinced that the legislature, in using the word "may" in the second sentence of Section 2945.77, Revised Code, intended to use it in the sense of giving to the prosecuting attorney or the defendant the option to poll the jury, and not the court discretion to grant or refuse the request when made.

The early Ohio cases hereinbefore cited and discussed, to-wit, *Sargent* v. *State, State* v. *Engles* and *Rose* v. *State*, definitely establish that our courts, prior to the enactment of Sections 164 and 166 of the Code on Criminal Procedure in 1869, determined that it was the fundamental right of a defendant charged with a criminal offense to be present in court and to have all of the jurors in the case present at the time the verdict was delivered, so that the defendant, if he desired, might poll each

member of the jury by having the clerk or the court inquire whether the written verdict was the verdict of each member of the jury.

Judge Birchard in the *Engles case, supra,* expressed the principle that the prisoner at common law was entitled to meet the jury face to face when the verdict was delivered, and to demand of each his separate verdict, and cited Blackstone's Commentaries as his authority.

In Ohio, as well as in other states of the union, and in England, up to the early part of the nineteenth century, verdicts of juries in criminal cases were, on some occasions, at least, delivered orally by the foreman, and were received by the court in open court in the presence of other members of the jury and the defendant. In such circumstances, the only opportunity and the only possible way a defendant and his counsel had of determining whether or not the jury were unanimous in their verdict, was to have the clerk or the court ask each member thereof whether or not the verdict announced orally by the foreman was their verdict.

However, as we have pointed out, the Code of Criminal Procedure, since 1869 has required, expressly or by implication, that verdicts in criminal cases be in writing and signed by the foreman or all the members of the jury.

The earlier concept that the verdict consists of that expression of the will of the jury announced in open court at the time the oral or written verdict is delivered to the court by the jury, has continued to prevail, and today it is still true that the written verdict executed by the jury only becomes the verdict of the jury if and when it is affirmed or confirmed in open court by the jury as a group upon general inquiry by the Clerk, or by the individual members thereof, if polled, in the presence of the parties to the proceeding, and particularly in the presence of the defendant in a criminal case.

Should any member of a jury necessary to a verdict dissent from a written verdict signed by him, or a verdict signed by the foreman in a criminal case, at the time it is delivered and announced in court, either on general inquiry or individual polling, the paper writing purporting to be the verdict, is not the verdict of the jury. It then becomes the duty of the court

to instruct the jury to retire and resume their deliberations in the case.

Otherwise stated, the written verdict executed by the jury prior to its delivery and reading in open court, is only written evidence as to what the jury intended their verdict to be at the time it was signed.

The procedure provided by law relative to receiving verdicts in open court in civil and criminal cases, was designed not only to protect the parties to the proceedings, particularly the defendant in a criminal case, but also to protect any member of the jury, who through duress, undue influence or by fraudulent means, may have been induced by another or others of the jury, or may have been led by a mistake as to the facts or the law, to concur in a written verdict which does not in fact represent the will and the intent of such party signing or purportedly concurring in the written verdict. Such procedure affording jurors an opportunity to express their dissent from a written verdict, in which they do not concur when it is delivered and read in open court, is in conformity with sound public policy and the highest standards of justice.

We are of the opinion from the foregoing, that although it is obvious the language of Section 2945.77, Revised Code, and its predecessor sections, is not as complete or mandatory in *form* in its polling provisions as the language in the civil verdict sections, nevertheless since the content and meaning of such civil verdict sections were incorporated in toto in the original, and in part in the later criminal procedure sections, and since the right of a defendant to mandatorily require the polling of the jury in a criminal case was uniformly established by early common law and Ohio case law, we have no doubt that the State legislatures enacting such criminal procedure sections, have always intended the polling provisions thereof to be mandatory when invoked by either the defendant or the prosecuting attorney. Certainly the right of a defendant to protect his life and liberty in a criminal case should rise above his right to protect himself and his property against money claims in civil cases.

In the instant case, although it appears each of the twelve jurors signed the verdict of guilty, since the record fails to show that the clerk or the court made any inquiry of the jury, either collectively or individually, as to whether or not the writ-

ten verdict was their verdict, we are of the opinion that the defendant-appellant herein was deprived of a fundamental right when the court denied his counsel's request that the jury be polled. Such request made individual polling of the jury mandatory.

With relation to defendant's second contention that the trial court erred in failing to instruct the jury upon two included and lesser offenses, to-wit, physical control of a motor vehicle while under the influence of alcohol, and improper (reckless) operation of a motor vehicle, we are of the opinion that the facts introduced in evidence did not justify the court submitting to the jury a charge on physical control of a motor vehicle while under the influence of alcohol, as the uncontradicted evidence shows that defendant's car was moving over a considerable distance on Patterson Boulevard before the apprehending officers brought defendant's car to a stop, and took him in custody.

The Court properly refused to charge the jury on improper operation or reckless driving as a lesser offense included within the driving-while-intoxicated offense charged in the affidavit, as under the law such offense is not an included offense.

The case of *City of Akron* v. *Kline*, 165 Ohio St., 322; 59 Ohio Opinions, 414, is authority for the proposition that evidence sufficient to sustain a conviction for reckless driving would not be sufficient to sustain a conviction for operating a vehicle while intoxicated, and that evidence sufficient to sustain a conviction for operating a motor vehicle while being intoxicated, would not be sufficient to sustain a conviction for reckless driving, as the elements required to prove such two offenses are different. The Court held in effect that reckless driving was not an included offense, and that a person could be found guilty of both operating a motor vehicle while intoxicated and reckless driving where two separate charges or affidavits are filed, without defendant being placed in double jeopardy.

With relation to defendant's third and fourth alleged grounds of error, that the Court erred in permitting the prosecuting attorney to make reference during the trial of the case to the drunkometer, in permitting the introduction of evidence concerning the drunkometer, in permitting argument relative to the drunkometer test, and the failure and refusal of defendant to take such a test, and in not removing such remarks

from the consideration of the jury, we are of the opinion that the Court did not commit prejudicial error in permitting such evidence, remarks and argument.

State v. Gatton, 60 Ohio App., 192; 14 Ohio Opinions, 20; State v. Nutt, 78 Ohio App., 336; 34 Ohio Opinions, 47; 46 Ohio Law Abs., 223.

However, we believe it would be better practice for the trial court, where the defendant declines to take the drunkometer test, to limit the number of references to drunkometer tests, drunkometer room, etc. in questions and answers, as well as in argument, seeing to it that unnecessary repetition is avoided.

From the foregoing, it follows that the verdict of the jury and the judgment of the lower Court should and the same will be reversed, vacated and set aside, and a new trial ordered.

An entry will be prepared accordingly.